# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

LUIS RAFAEL JIMINEZ,   ) Case No. CV 16-1029-SP
          Plaintiff,   )
          v.   ) MEMORANDUM OPINION AND ORDER
NANCY A. BERRYHILL,   )
Acting Commissioner of Social Security )
Administration,   )
          Defendant.   )

## I.
## **INTRODUCTION**

On February 12, 2016, plaintiff Luis Rafael Jiminez filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"),[1] seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Both

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill, the current Acting Commissioner of Social Security Administration, has been substituted as the defendant.

1

plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three issues for decision: (1) whether the administrative law judge ("ALJ") properly considered plaintiff's credibility; (2) whether the ALJ properly considered the opinions of two lay witnesses; and (3) whether the ALJ's residual functional capacity ("RFC") determination was supported by substantial evidence. Plaintiff's Memorandum in Support of the Complaint ("P. Mem.") at 2; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-10.

Having carefully studied the parties' written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did not err. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was thirty years old on his alleged disability onset date and completed the eleventh grade. AR at 51, 84. Plaintiff has no past relevant work. *See id.* at 35.

On March 21 and 23, 2012, plaintiff filed applications for a period of disability, DIB, and SSI due to severe chronic lower back pain, radiculopathy, depression, anxiety with panic attacks and social isolation, and degeneration of the lumbar spine.[2] *See id.* at 84, 95. The applications were denied initially and upon reconsideration, after which he filed a request for a hearing. *See id.* at 126-30, 132-36.

On March 13, 2014, plaintiff, represented by counsel, appeared and testified

---

[2] Plaintiff also filed two prior sets of applications for DIB and SSI in 2006 and 2010. *See* AR at 85.

2

at a hearing before the ALJ. *Id*. at 42-81. The ALJ also heard testimony from Jane Hale, a vocational expert. *Id*. at 71-76. On March 28, 2014, the ALJ denied plaintiff's claims for benefits. *Id*. at 22-37.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since December 30, 2009, the alleged onset date. *Id*. at 25.

At step two, the ALJ found plaintiff suffered from the following severe impairments: minimal dextroconvex scoliosis of the lumbar spine and lumbago. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 29-30.

The ALJ then assessed plaintiff's RFC,[3] and determined he had the RFC to perform "essentially the full range of light work," with the limitations that plaintiff could: lift and/or carry twenty pounds occasionally and ten pounds frequently; no more than occasionally stoop, crouch, or crawl; and frequently climb, balance, and kneel. *Id.* at 30.

The ALJ found, at step four, that plaintiff had no past relevant work. *Id.* at 35.

At step five, the ALJ determined that, based upon plaintiff's age, education, work experience, and RFC, plaintiff could perform jobs "that exist in significant

---

[3] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

numbers in the national economy," including housekeeping cleaner, small products assembler, and marker. *Id*. at 36. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act ("SSA"). *Id.* at 37.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.
## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"

4

*Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.
# DISCUSSION

## A. The ALJ Properly Considered Plaintiff's Credibility

Plaintiff argues the ALJ failed to make a proper credibility determination. P. Mem. at 2-13. Specifically, plaintiff contends the ALJ's reasons for discounting his credibility were not supported by substantial evidence. *Id.*

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[4] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Benton v. Barnhart*, 331

---

[4] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

5

F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 32. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's credibility. The ALJ found plaintiff to be not entirely credible because: (1) plaintiff's alleged symptoms were inconsistent with the objective medical evidence; (2) there was a lack of a clear nexus between his injury, onset date, and complaints; (3) the record contains inconsistent clinical findings; (4) plaintiff exhibited inconsistent efforts during psychological examinations; (5) plaintiff failed to seek psychiatric treatment; and (6) plaintiff engaged in work inconsistent with his symptoms while allegedly disabled.[5] *Id.* at 32-33.

At the hearing, plaintiff testified that due to a 1998 injury, he experienced mid and lower back pain that shot down his legs, as well as suffered from depression and anxiety attacks. *Id*. at 55, 61-62. Plaintiff testified that he could not watch a full episode of television because he would "space out," could not do

---

[5] Both plaintiff and defendant identified reasons for the ALJ's adverse credibility finding that the ALJ did not cite. Contrary to plaintiff's contentions, the ALJ did not cite plaintiff's daily activities as a basis for finding him less credible. *See* P. Mem. at 2-3. The ALJ simply noted plaintiff testified to "markedly reduced activities of daily living" but such testimony was not credible for the reasons provided, not because of the activities themselves. *See* AR at 33. And contrary to respondent's argument, the ALJ did not cite conservative treatment as a basis for an adverse credibility finding. *See* D. Mem. at 3-4.

6

light housework, used a motorized cart when shopping, could only stand for fifteen minutes and sit for thirty minutes at a time, and could not lift and carry anything. *See id*. at 64-68. In a June 2012 Function Report, plaintiff reported he could only walk five minutes before needing to rest for ten minutes, could only pay attention for ten to fifteen minutes at a time, and needed help with personal care such as dressing and showering. *See id*. at 215, 219.

The ALJ's first reason for an adverse credibility finding was that plaintiff's alleged symptoms were inconsistent with the objective findings. *Id*. at 32-33; *see Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (the lack of objective medical evidence to corroborate pain allegations is one factor, in conjunction with others, the ALJ may consider in his or her credibility determination). Specifically, the ALJ noted that although plaintiff alleged radicular type pain, the neurological tests were normal. *See* AR at 32-33. The ALJ's finding was supported by substantial evidence. Despite plaintiff's complaints of pain shooting down his legs, an electromyogram and nerve conduction study both had normal findings. *See id*. at 293. As a result, the physician reviewing the studies, Dr. Pejman Eli Shirazi, determined there was no evidence of lumbar radiculopathy, peripheral plexopathy, and entrapment neuropathy. *Id*. at 294. Instead, Dr. Shirazi opined plaintiff's pain was most likely cause by musculoskeletal inflammatory processes. *Id*. But the objective musculoskeletal findings were relatively benign. An MRI showed no evidence of disc herniation, stenosis, or abnormal enhancement, while an x-ray showed questionable L5 pars defects, ones which were only seen on the lateral view. *See id*. at 418, 426.

The ALJ also noted plaintiff tended to exaggerate, as many of his complaints were not supported by the objective medical record. *See id*. at 33. In addition to back pain, plaintiff alleged he also suffered from a heart condition, asthma, and upper extremity pain. *Id*. at 199, 309. But the record shows that plaintiff exhibited

7

normal strength, reflexes, and sensation in his upper extremities. *Id*. at 390, 393, 422. And there is no documentation of any heart condition or asthma. Indeed, although plaintiff reported that he had occasional sharp chest pain and sometimes shortness of breath, he denied any history of heart disease, did not tell any physician he had asthma, and was not prescribed any asthma medication. *See id*. at 371. As such, the ALJ's finding that the objective medical evidence did not support plaintiff's alleged symptoms was a clear and convincing reason supported by substantial evidence for discounting his credibility.

The ALJ's second reason for finding plaintiff less credible was that there was a lack of a clear nexus between his injury, onset date, and complaints. *Id*. at 33. The ALJ noted that plaintiff alleged he was first injured in 1998, but alleged an onset of disability of December 30, 2009, eleven years after the injury. *See id*. Prior to the current alleged onset date, plaintiff filed two prior applications with earlier onset dates,[6] and was able to work as a caretaker for his brother, work that required him to attend to his brother the entire day and lift over 200 pounds. *See id*. at 33, 180, 188, 375. The ALJ correctly notes that there was no clear nexus between the injury onset date and complaints. But plaintiff's failure to explain the nexus, by itself, was not a clear and convincing reason to find plaintiff less credible. It is plausible that plaintiff developed pain distinct from the prior injury or that the severity of his symptoms worsened in 2009. Thus, although plaintiff's allegations of pain caused by a 1998 injury appeared to be dubious, the lack of a clear nexus, by itself, was not a clear and convincing reason to find plaintiff less credible.

Third, the ALJ discounted plaintiff's credibility because the clinical findings were inconsistent, thereby suggesting plaintiff was exerting an inconsistent effort

---

[6] In 2006 and 2010, plaintiff applied for a period of disability, DIB, and SSI, alleging an onset date of April 2000. *See* AR at 22, 85.

8

or exaggerating. *Id*. at 33. Here, as the ALJ noted, on multiple occasions, physicians observed plaintiff had positive straight leg raising tests, tenderness, decreased sensation, spasm, and slightly reduced motor strength in the lower extremities. *See, e.g., id*. at 32, 291, 295, 373, 392-93. But plaintiff also had a negative single leg raise test in December 2012, demonstrated normal motor strength in the lower extremities, and often exhibited no pain or spasm. *See, e.g., id*. at 32, 373, 390, 399, 401, 416. And although plaintiff had exhibited difficulty walking in 2009, on more recent occasions, plaintiff was able to walk with a normal gait and do both a heel walk and toe walk. *Compare id*. 292, 295 and 373-75, 393, 423. As such, substantial evidence supported the ALJ's finding that the clinical findings were inconsistent.

The ALJ's fourth reason for an adverse credibility finding – plaintiff made inconsistent efforts during his psychological consultative examination – was similarly supported by substantial evidence. *See id*. at 33. Plaintiff underwent two psychological evaluations, one with Dr. Bahareh Talei on May 18, 2011 and one with Dr. Rosa Colonna on June 21, 2012. *Id*. at 376-81, 384-88. During each evaluation, the physicians administered an IQ examination and memory test. *See id*. at 379, 387. During Dr. Talei's evaluation, Plaintiff scored a full scale IQ of 69 and his memory index scores ranged from 49 to 70. *See id*. at 379. In contrast, plaintiff scored a full scale IQ of 84 and his memory index scores ranged from 70 to 71 with Dr. Colonna. *See id*. at 387. Dr. Colonna observed that plaintiff exerted inconsistent effort on the psychometric testing and the ALJ noted the 15-point discrepancy further suggested a lack of effort.[7] *See id*. at 29, 384. Dr. Colonna's observation and the score discrepancy constituted substantial evidence that plaintiff

---

[7] Plaintiff argues a gain in IQ on retesting is common. P. Mem. at 9. But even assuming plaintiff is correct that a normal gain is 4.4 points, that is well below the 15-point difference here. *See id*.

9

was not exerting full effort.

Fifth, the ALJ cited plaintiff's failure to seek psychiatric treatment despite allegedly suffering from depression and anxiety as a reason to find plaintiff less credible. *See id*. at 33; *Tommasetti*, 533 F.3d at 1039. A claimant's failure to seek mental health treatment is not necessarily a clear and convincing reason to find him less credible because "those afflicted [with depression] often do not recognize that their condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996); *accord Allen v. Comm'r*, 498 Fed. Appx. 696, 697 (9th Cir. 2012) (the "[f]ailure to seek treatment is not a substantial basis on which to conclude that a claimant's mental impairment is not severe"). Moreover, the failure to seek treatment may not be a basis for an adverse credibility finding if there was a good reason for not doing so. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (stating that the failure to seek treatment may be a basis for an adverse credibility finding unless there was a good reason for not doing so). Here, neither reason to disregard a claimant's failure to seek treatment applies. Plaintiff was cognizant of his alleged depression and anxiety and his treating internist prescribed anti-anxiety medication. Nevertheless, plaintiff did not seek treatment from a mental health specialist despite his internist's recommendation.[8] *See* AR at 63. And although plaintiff represented he did not have the finances and insurance to seek treatment, he was on MediCal and therefore could have sought treatment. *See id*. at 50, 377. Contrary to plaintiff's claims, there is no evidence his plan did not provide mental health treatment.

Finally, the ALJ's sixth reason for finding plaintiff less credible was plaintiff's ability to engage in work cleaning pools while allegedly disabled. *See id*. at 33. A plaintiff is not disabled if he can engage in substantial gainful activity.

---

[8] Subsequent to the first consultative examination, plaintiff denied any history of a mental disorder. *See* AR at 385, 392.

10

*See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). In December 2012, plaintiff reported that he was cleaning pools. AR at 398. An attempt to work, by itself, may be insufficient to discredit plaintiff's symptoms, particularly when it is unclear how long plaintiff worked and the reasons he stopped. But although it is unclear how long plaintiff worked since there are no earnings records,[9] the ability to work as a pool cleaner is inconsistent with plaintiff's testimony that he could only stand for fifteen minutes and could not lift or carry anything. *See id.* at 67; *Griffin v. Colvin*, 2014 WL 128091, at *3 (C.D. Cal. Jan. 9, 2014) (plaintiff's work as a caretaker was inconsistent with her claimed limitations and thus was a clear and convincing reason to discount her credibility); *Kephart v. Colvin*, 2014 WL 2557676, at *3-*4 (C.D. Cal. June 6, 2014) (although plaintiff's work did not constitute substantial gainful activity, it was a clear and convincing reason to discount her credibility because it shows her daily activities were greater than reported). Thus, even if plaintiff's pool cleaning was not a substantial gainful activity, the inconsistency of the demands of pool cleaning with plaintiff's alleged symptoms was a clear and convincing reason to discredit his testimony.

In sum, the ALJ cited multiple clear and convincing reasons supported by substantial evidence for finding plaintiff less than entirely credible. As such, the ALJ did not err in discounting plaintiff's credibility.

**B.** **<u>The ALJ Properly Considered the Lay Testimony</u>**

Plaintiff argues the ALJ failed to properly evaluate the statements of lay witnesses, Kirsten Jimenez and Danny Jones. P. Mem. at 13- 16. Specifically, plaintiff contends the ALJ failed to provide germane reasons for disregarding the observations of both witnesses. *See id.*

---

[9] Plaintiff worked for pool cleaning service in the past, during which he was paid in cash. *See* AR at 55. Plaintiff's sister, with whom he lived, cleans pools for a living. *See id.* at 50.

11

"[L]ay testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) (internal quotation marks, ellipses, and citation omitted); *see Smolen*, 80 F.3d at 1288; *see also* 20 C.F.R.§§ 404.1513(d)(4), 416.913(d)(4) (explaining that the Commissioner will consider all evidence from "non-medical sources[,]" including "spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy").[10] The ALJ may only discount the testimony of a lay witness if he provides specific "reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *see Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and give reasons germane to each witness for doing so.").

Similarly, the social security regulations require an ALJ to consider all medical source information, but distinguish between opinions from "acceptable medical sources" and those from "other sources." *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.1996) (superseded by regulation on other grounds). A physician's assistant is an "other" source. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). As with non-medical sources, the ALJ only has to provide a germane reason for discounting the opinion of a not acceptable medical source. *See Bain v. Astrue*, 319 Fed. Appx. 543, 546 (9th Cir. 2009).

**1.    Kirsten Jimenez**

Kirsten Jimenez, plaintiff's estranged wife, completed a Third Party Function Report in June 2012, while she and plaintiff were still living in the same

---

[10] The Social Security Administration issued new regulations effective March 27, 2017. Unless otherwise stated, all regulations cited in this decision are effective for cases filed prior to March 27, 2017.

12

house. AR at 206-13; *see id.* at 50-51. In the Function Report, Ms. Jimenez stated she assisted plaintiff with his personal care and meals. *See id.* at 206, 208. Ms. Jimenez reported plaintiff watched TV and rested most of the day due to pain, had cramps and spasms, used a motorized cart when shopping, and could only walk five to ten minutes at a time. *See id.* at 206-11.

The ALJ discounted Ms. Jimenez's observations because: (1) her statement that plaintiff needed a motorized cart was inconsistent with objective findings and the record; (2) she was not qualified to make "exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms"; (3) her observations were not necessarily indicative of plaintiff's maximum abilities; and (4) plaintiff's ability to work was inconsistent with Ms. Jimenez's observations. *See id.* at 34. Some of the ALJ's reasons were germane and supported by substantial evidence.

First, the ALJ found Ms. Jimenez's statement that plaintiff needed a motorized cart while shopping was inconsistent with the objective findings and record. As discussed above, plaintiff had positive straight leg raise tests, decreased sensation, spasms, tenderness, and a slightly decreased motor strength (4/5) in the lower extremity, as well as an antalgic gait, on some occasions. *See, e.g., id.* at 373, 392-93. But plaintiff also exhibited a normal walk, no pain and tenderness, and a negative single leg raise test on other occasions. *See id.* at 291-92, 295, 373-75, 393. The ALJ reasonably found the record did not support the walking limitations observed by Ms. Jimenez. *See Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (inconsistency with medical record is germane reason for discounting lay opinion).

Second, the ALJ discounted Ms. Jimenez's opinion because she was not medically trained to make exact observations as to frequency, types, and degrees of symptoms. *See* AR at 34. A lay witness is by definition not an acceptable medical

source. The ALJ's rejection of a lay witness's testimony because he or she is not medically trained therefore amounted to a wholesale rejection of all lay testimony and was not germane to Ms. Jimenez. *See Smolen*, 80 F.3d at 1289 (the ALJ's rejection of plaintiff's family member's testimony as biased "amounted to a wholesale dismissal of the testimony of all [the family] witnesses as a group and therefore does not qualify as a reason germane to each individual who testified").

The ALJ's discounting of Ms. Jimenez's observations on the basis that observations by family members do not necessarily reflect plaintiff's maximum abilities was similarly not germane. *See* AR at 34. Again, the ALJ's reason for discounting the observation would be applicable to any lay witness who is a relative and therefore was not germane to Ms. Jimenez.

Finally, the ALJ cited plaintiff's ability to clean pools subsequent to the submission of Ms. Jimenez's Third Party Function Report as inconsistent with her observations. *See id.* The ability to clean pools was clearly inconsistent with Ms. Jimenez's observations regarding plaintiff's pain, activity level, ability to walk and stand.

Thus, the ALJ cited some germane reasons supported by substantial evidence for discounting Ms. Jimenez's statements.

### 2. **Danny Jones**

Danny Jones, a physician's assistant, authorized a temporary disability placard valid from February 8, 2013 through August 8, 2013. *Id.* at 410. The ALJ gave no weight to Jones's opinion because: (1) the placard did not cover a period of at least twelve consecutive months; (2) disability for purposes of obtaining a disability placard is not the same as for obtaining social security disability purposes; and (3) Jones was not an acceptable medical source. *See id.* at 34.

An ALJ must consider all medical source information and cannot discount an opinion simply because it is from non-acceptable medical source. *See* 20 C.F.R.

404.1513(d)(1), 416.913(d)(1).  The ALJ may disregard ultimate determinations of disability but, as with any other opinions from not acceptable medical sources, the ALJ must provide germane reasons supported by substantial evidence for giving it less or no weight.  *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  Here, the ALJ provided two germane reasons.

First, in order to qualify for DIB or SSI, an impairment must last for a continuous twelve-month period.  20 C.F.R. §§ 404.1509, 416.909.  By authorizing a temporary, six-month placard, Jones effectively opined only a temporary six-month period of disability.  *See* AR at 410.  Second, the ALJ rightly found the California Department of Motor Vehicle's requirements for issuing a disability placard are different than those set forth by the Social Security Administration.  *See Berrigan v. Astrue*, 2011 WL 4624666, at *5 (E.D. Cal. Oct. 4, 2011); *Beauchamp v. Astrue*, 2010 WL 2925431, at *12 (S.D. Cal. Apr. 23, 2010).  These were germane reasons for giving no weight to the issuance of the placard.

Accordingly, the ALJ properly considered the opinions of Kirsten Jimenez and Danny Jones, and provided germane reasons supported by substantial evidence for discounting the opinions.

**C.**    **The ALJ's RFC Assessment Is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.  P. Mem. at 16-17.  Specifically, plaintiff contends that the ALJ failed to address the effect of plaintiff's pain in his RFC determination.

RFC is what one "can still do despite [his or her] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The Commissioner reaches an RFC determination by reviewing and considering all of the relevant evidence.  *Id.*

Here, the ALJ determined plaintiff had the RFC to lift and/or carry twenty pounds occasionally and ten pounds frequently with some postural limitations, and thus can perform "essentially the full range of light work."  AR at 30.  In reaching

his RFC determination, the ALJ discussed all of the medical evidence and opinions, and found that plaintiff had the severe impairments of minimal dextroconvex scoliosis of the lumbar spine and lumbago. *See id*. at 25-35. The ALJ also discussed plaintiff's subjective complaints of pain and the treatments he received. *See id*. As discussed above, although there was objective medical evidence to support a finding of severe medical impairments, the medical evidence did not support the degree of symptoms plaintiff alleged. Plaintiff complained of shooting pain, but the neurological examinations were normal. And despite plaintiff's complaints about difficulty with standing and walking, physicians observed plaintiff ambulating without discomfort and with a normal gait, and plaintiff only had a slightly reduced leg strength. *See id*. at 373-75, 390, 393, 401. The ALJ properly considered all of the opinion evidence, explaining which portions he gave weight to, and plaintiff's subjective complaints. Accordingly, the ALJ in fact considered the pain evidence, and his RFC determination was supported by substantial evidence as the ALJ included limitations supported by the credited opinion evidence, medical record, and plaintiff's complaints.

## V.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: October 27, 2017

SHERI PYM
United States Magistrate Judge